UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL JEROME LEE,

          Petitioner,

v.                                          Case No. 3:22-cv-822-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
AND FLORIDA ATTORNEY GENERAL,

          Respondents.

_____

## ORDER

### I. Status

Petitioner Michael Jerome Lee, an inmate of the Florida penal system,

initiated this action on July 29, 2022,[1] by filing a Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1) with a memorandum of law

(Memo; Doc. 1-1).[2] In the Petition, Lee challenges three 2018 state court (Baker

County, Florida) judgments of conviction for fleeing to elude – siren and lights

activated with high speed or reckless driving, aggravated assault on a law

enforcement officer, and driving while license revoked habitual traffic offender.

He raises three grounds for relief. See Petition at 6–12; Memo at 15–22.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Respondents submitted a memorandum in opposition to the Petition. <u>See</u> Response to Petition for Writ of Habeas Corpus (Response; Doc. 7). They also submitted exhibits. <u>See</u> Docs. 7-1 through 7-21. Lee filed a brief in reply. <u>See</u> Petitioner's Reply to Response to Petition for Writ of Habeas Corpus (Reply; Doc. 8). This action is ripe for review.

## II. Relevant Procedural History

On April 6, 2018, the State of Florida charged Lee by amended information in <u>State v. Lee</u>, No. 02-2017-CF-000446-A (Fla. 8th Cir. Ct.), with fleeing or attempting to elude – lights and sirens in high speed chase (Count One), aggravated assault on a law enforcement officer (Count Two), and felony driving while license revoked habitual offender revocation (Count Three). Doc. 7-1 at 26–27. On April 12, 2018, a jury found Lee guilty of all three counts as charged. <u>Id.</u> at 71–72. On the same day, the trial court sentenced Lee to the following consecutive terms of imprisonment: fifteen years as to Count One;[3] fifteen years as to Count Two; and five years as to Count Three. <u>Id.</u> at 78–86.

On direct appeal, with the benefit of counsel, Lee filed an initial brief, arguing that trial counsel was ineffective on the face of the record for failing to request reckless driving be added as a lesser-included offense of aggravated assault. Doc. 7-3 at 14–21. The State filed an answer brief, Doc. 7-4, and Lee

---

[3] The trial court further ordered the sentence for Count One run consecutive to Lee's sentence imposed in a separate criminal case. <u>Id.</u> at 81.

replied, Doc. 7-5. The First District Court of Appeal (First DCA) issued a written per curiam opinion affirming Lee's convictions and sentences on May 16, 2019, and issued the mandate on June 6, 2019. Lee v. State, 272 So. 3d 827 (Fla. 1st DCA 2019); Doc. 7-6 at 2–4. Lee filed a Notice to Invoke Discretionary Jurisdiction in the Florida Supreme Court, Doc. 7-7 at 2–3, but the Florida Supreme Court declined to accept jurisdiction, and denied the petition for review on September 12, 2019, Doc. 7-8 at 2. Lee v. State, No. SC19-852, 2019 WL 4318430, *1 (Fla. Sept. 12, 2019).

Before the Florida Supreme Court issued its decision, Lee filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). Doc. 7-9 at 10–13. The postconviction court denied the motion on October 30, 2019. Id. at 21–25. The First DCA per curiam affirmed the postconviction court's denial without a written opinion on March 19, 2020, Doc. 7-10 at 3–4, and issued the mandate on April 16, 2020, id. at 2.

While his appeal of the 3.800 denial was pending, Lee filed a motion for postconviction relief, titled "Petition for Writ of Habeas Corpus," alleging: (1) his convictions violated double jeopardy; (2) trial counsel was ineffective for failing to call Detective Sharman[4] as a witness; (3) trial counsel was ineffective

---

[4] This detective's last name is spelled in different ways within this Petition as well as in the state court records, so this Court uses the same spelling as the postconviction court for ease of reference.

for failing to impeach Sergeant Walker; (4) a <u>Brady</u>[5] violation occurred based on the concealment of Detective Sharman's testimony; (5) there was newly discovered evidence in the form of Detective Sharman's deposition testimony (Rule 3.850 Motion; Doc. 7-11 at 10–19). The postconviction court construed the motion as a motion filed pursuant to Florida Rule of Criminal Procedure 3.850 and summarily denied the motion on March 9, 2020. <u>Id.</u> at 41–48. The First DCA per curiam affirmed the postconviction court's denial without a written opinion on November 6, 2020, Doc. 7-12 at 3–4, and issued the mandate on December 4, 2020, <u>id.</u> at 2.

On April 16, 2020,[6] Lee filed a motion for leave to file supplemental Rule 3.850 claims (Supplemental 3.850 Motion; Doc. 7-13 at 13–22). Lee raised the three supplemental claims, alleging counsel was ineffective for: (1) misadvising Lee to proceed to trial rather than accept the State's ten-year plea offer; (2) inducing Lee to proceed to trial by indicating she would argue that his sentences should run concurrent to his forthcoming federal sentence; and (3) failing to properly advise Lee of the facts and evidence in the case by withholding certain discovery exhibits. <u>Id.</u> The postconviction court granted Lee's request to proceed on the supplemental claims, ordered an evidentiary

---

[5] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[6] In this Motion, Lee stated that he had originally submitted the supplemental claims in an August 2019 filing; however, the postconviction court determined such motion was not filed at that time. <u>See</u> Doc. 7-13 at 23, n. 1.

hearing on all three supplemental grounds, and appointed counsel to represent Lee in those proceedings. Id. at 23–26. At the evidentiary hearing, Lee made a request to withdraw all claims. Id. at 109. After the postconviction court denied the request, Lee exhibited disruptive courtroom behavior. Id. at 110–15. His conduct led the postconviction court to find that Lee made the voluntary decision to be absent from the proceedings and to order Lee be removed from the courtroom. Id. at 114–15. The postconviction court offered Lee opportunities to rejoin the proceedings, but Lee continued his refusal to participate. Id. at 140, 155. On October 1, 2020, following the evidentiary hearing, the postconviction court entered a final order denying all relief. Id. at 64–70. The First DCA per curiam affirmed the postconviction court's denial without a written opinion on September 10, 2021, Doc. 7-17 at 3–4, and issued the mandate on November 29, 2021, id. at 2.

On November 2, 2021, Lee filed a pro se "Petition for Writ of Habeas Corpus [Cum Causa – Ineffective Assistance of Appellate Counsel]" in the First DCA (State Habeas Petition; Doc. 7-18 at 2–36). Lee raised six grounds, alleging lack of trial court jurisdiction, trial court error, prosecutorial misconduct, his convictions violated the ex post facto clause and double jeopardy, and he received ineffective assistance of appellate counsel. On January 19, 2022, the First DCA dismissed the petition without written opinion. Doc. 7-19 at 2–3.

5

After the filing of this Petition, Lee filed a "Petition for Writ of Habeas Corpus Premised [on a] Violation of the Due Process Clause" with the trial court on November 11, 2022. Doc. 7-20 at 13–22. On December 7, 2022, the postconviction court treated the petition as a motion for postconviction relief and denied the motion as untimely and procedurally barred and, alternatively, found his claims to be without merit. Id. at 28–30. The First DCA per curiam affirmed the postconviction court's denial of relief without written opinion on December 12, 2023. Lee v. State, 378 So. 3d 1167 (Fla. 1st DCA 2023) (unpublished table opinion).

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the

6

applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Lee's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles
### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>abrogation recognized on other grounds by</u> <u>Smith v. Comm'r, Ala. Dep't of Corr.</u>, 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y,</u>

7

Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98.

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at --
-, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290,
301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential
review under § 2254(d) generally is limited to the record that was before the
state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>,
563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an
examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for
prisoners whose claims have been adjudicated in state court." <u>Titlow</u>, 571 U.S.
at 19. "Federal courts may grant habeas relief only when a state court
blundered in a manner so 'well understood and comprehended in existing law'
and 'was so lacking in justification' that 'there is no possibility fairminded
jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at
102–03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562
U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated
on the merits in the state courts, they must be evaluated under 28 U.S.C. §
2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a
§ 2254 habeas action in federal court, a petitioner must exhaust all state court
remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C.

§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365–366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[7] supra, at 747–748, 111 S. Ct. 2546; Sykes,[8] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state

---

[7] Coleman v. Thompson, 501 U.S. 722 (1991).
[8] Wainwright v. Sykes, 433 U.S. 72 (1977).

habeas petitioner can show either (1) cause for and actual prejudice from the

default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d

1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that prevented
> [him] from raising the claim and which cannot be
> fairly attributable to his own conduct." <u>McCoy v.
> Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[9]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>,
> 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may

receive consideration on the merits of a procedurally defaulted claim if the

petitioner can establish that a fundamental miscarriage of justice, the

continued incarceration of one who is actually innocent, otherwise would

result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice,
> there remains yet another avenue for him to receive
> consideration on the merits of his procedurally
> defaulted claim. "[I]n an extraordinary case, where a
> constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence
> of a showing of cause for the procedural default."
> <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This

---

9 <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

> exception is exceedingly narrow in scope," however,
> and requires proof of actual innocence, not just legal
> innocence. Johnson v. Alabama, 256 F.3d 1156, 1171
> (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person
> challenging a conviction must show that "counsel's
> representation fell below an objective standard of
> reasonableness." [Strickland,] 466 U.S. at 688, 104 S.

14

Ct. 2052.  A court considering a claim of ineffective
assistance must apply a "strong presumption" that
counsel's representation was within the "wide range"
of reasonable professional assistance. Id., at 689, 104
S. Ct. 2052. The challenger's burden is to show "that
counsel made errors so serious that counsel was not
functioning as the 'counsel' guaranteed the defendant
by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must
demonstrate "a reasonable probability that, but for
counsel's unprofessional errors, the result of the
proceeding would have been different. A reasonable
probability is a probability sufficient to undermine
confidence in the outcome." Id., at 694, 104 S. Ct. 2052.
It is not enough "to show that the errors had some
conceivable effect on the outcome of the proceeding."
Id., at 693, 104 S. Ct. 2052. Counsel's errors must be
"so serious as to deprive the defendant of a fair trial, a
trial whose result is reliable." Id., at 687, 104 S. Ct.
2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of
any iron-clad rule requiring a court to tackle one prong of the Strickland test
before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part
Strickland test must be satisfied to show a Sixth Amendment violation, "a
court need not address the performance prong if the petitioner cannot meet the
prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243,
1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient prejudice, which we
expect will often be so, that course should be followed." Strickland, 466 U.S. at
697.

15

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. See Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020); Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). The Eleventh Circuit has instructed:

> In assessing an appellate attorney's performance, we are mindful that "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." Id. at 1130–31.[10] Rather, an effective attorney will weed out weaker arguments, even though they may have merit. See id. at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. See id. at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." Id.

Philmore, 575 F.3d at 1264–65.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S.

---

[10] Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).

> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.</u>

<u>Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds

another layer of deference—this one to a state court's decision—when we are

considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,

"[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.</u>

<u>Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law
### A. Ground One

Lee alleges trial counsel was ineffective for failing to file a pretrial

motion to suppress or pursue evidence and testimony at trial to show the

officers conducted an illegal stop and arrest. Petition at 6–8; Memo at 30–32.

Specifically, Lee states the officers involved in his arrest made inconsistent

statements in their depositions, trial testimony, and violation of probation

hearing testimony, which he asserts show they provided false testimony "to

justify an illegal stop and arrest" in order to search his vehicle for drugs.

Petition at 6, 8; Memo at 30.

Respondents assert Lee failed to exhaust this claim. Response at 17–21. First, Respondents state Lee admitted to this failure when he checked the box "no" on page 8 of his Petition when asked whether he raised the issue in a postconviction motion. Id. at 17. Respondents further assert that the matter is procedurally defaulted because Lee could not now return to raise the claim in another successive Rule 3.850 motion, and that Lee has not demonstrated cause and prejudice or actual innocence to excuse the default. Id. at 17–21. In Reply, Lee states that he agrees with the Respondents' position that he did not raise this ground previously and could not now do so but asks that the Court overlook the procedural bar citing to Martinez v. Ryan, 566 U.S. 1 (2012), and arguing that his lack of postconviction counsel constitutes cause and prejudice to overcome this default. Reply at 2–6.

Initially, the Court notes that in his Petition, Lee states that he raised this claim as Issue Three of his Rule 3.850 Motion. Petition at 6. However, as Issue Three of that motion, Lee raised a claim of newly discovered evidence. In Issue Two of the Rule 3.850 Motion, while Lee did allege counsel was ineffective for failing to present evidence of inconsistent statements[11] by Crews, Walker, and Sharman for impeachment purposes, see Doc. 7-11 at 16–

---

[11] In the Petition, Lee highlights some similar inconsistencies discussed in his Rule 3.850 Motion, but each motion also raises distinct inconsistencies not raised in the other. See Rule 3.850 Motion at 11–13, 16–17.

17, this is different from the issue he currently raises in the Petition. Here he alleges evidence of the inconsistent statements should have been presented to the court in a motion to suppress or at trial for the purposes of showing an illegal stop. But, Lee did not challenge the legality of the underlying traffic stop nor did he argue trial counsel should have filed a motion to suppress in his Rule 3.850 Motion. The issue raised by Lee in his Rule 3.850 Motion, thus, did not "fairly present" the claim he raises in the Petition to allow for state court adjudication. See Green v. Sec'y, Dep't of Corr., 28 F.4th 1089, 1135 (11th Cir. 2022) ("The exhaustion requirement applies not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. Presentation of a claim under the same general legal umbrella but with entirely different factual underpinnings [also] does not constitute fair presentation of the … claim." (internal citations and quotation marks omitted)).

In Lee's Memorandum, he seems to suggest that he raised this claim as part of his Supplemental 3.850 Motion and corresponding appeal, but that postconviction counsel failed to accurately present the claim. Memo at 15–18. But, in his Supplemental 3.850 Motion, Lee did not argue counsel should have filed a motion to suppress or used the officers' alleged inconsistencies at trial to show the underlying traffic stop was illegal. See Doc. 7-13 at 13–22. Accordingly, the Court agrees with both parties' final position that this issue

was not "fairly presented" to the state court. See Response at 17–18; Reply at 2. Moreover, because any future attempt to exhaust this claim would now be futile, it is procedurally defaulted.

As to whether the Court should excuse the procedural default, the Eleventh Circuit has explained the holding of Martinez as follows:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. Id. at 14, 132 S.Ct. at 1318; see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements).

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is substantial if the petitioner demonstrates it "has some merit." Martinez, 566 U.S. at 14.

Here, considering the record, the Court finds Lee has not shown that his underlying ineffective assistance of counsel claim is substantial. An

automobile stop is "reasonable" to justify even a temporary detention where officers "have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 809–10 (1996). The inconsistencies Lee raises primarily involve the initial sighting of Lee running a red light coming out of the apartment complex. However, in addition to the law enforcement officers' testimony, eyewitness Regina Watts, testified she had to make defensive maneuvers when Lee ran a stop sign while being pursued by the police SUV with its lights on. Doc. 7-2 at 72–74, 75. Watts' testimony alone supports the officers' accounts of that portion of the pursuit and supports a finding that the officers had probable cause to stop Lee for the traffic infraction of failing to make a complete stop at a stop sign as well as the charge of fleeing or attempting to elude – lights and sirens in high speed chase. Fla. Stat. §§ 316.1935(3)(a), 316.123 (2017). There was also evidence that it was Defendant driving the vehicle during the contested episode while his license was revoked. See Docs. 7-1 at 36–43; 7-2 at 31–32, 39, 48. Those facts justified an arrest for Felony Driving While License Revoked under section 322.34(5), Florida Statutes, and no inconsistencies from the officers nor Lee's own assertions contradict those facts.

Moreover, whether the officers' intentions were to stop Lee to search his vehicle for drugs is of no consequence because the actual motivations of the individual officers involved in a stop do not affect the constitutional

reasonableness of a traffic stop under the Fourth Amendment. <u>Whren</u>, 517 U.S. at 813; <u>United States v. Harrelson</u>, 465 F. App'x 866, 868 (11th Cir. 2012);[12] <u>Hilton v. State</u>, 961 So. 2d 284, 294 (Fla. 2007). Accordingly, a motion to suppress would not have been granted and there is no reasonable probability the result of the proceedings would have been different had counsel argued the stop or arrest were illegal on this basis. As such, the Court finds that this ineffective assistance of counsel claim is not "substantial"; and Lee's failure to exhaust is not excused under <u>Martinez</u>. Lee is not entitled to federal habeas relief on this claim.

## B. Ground Two

Lee alleges trial counsel was ineffective for advising him to reject a favorable ten-year plea offer "under assurances" that counsel would successfully challenge the legality of Lee's arrest and impeach the officers' testimony. Petition at 9–10; Memo at 19–20. Lee states he raised this claim in Issue One of his Rule 3.850 Motion and in his "postconviction appeal." Petition at 9. He further asserts his attempt to raise this claim during state proceedings

---

[12] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

was thwarted by postconviction counsel's refusal to meet with Lee and counsel's unpreparedness for the evidentiary hearing. Id.

Respondents contend the claim is unexhausted and procedurally barred. Response at 22–26. Specifically, they argue that while Lee previously alleged counsel was ineffective for misadvising him and causing him to reject the ten-year plea offer, the claim in the Petition is unexhausted as the misadvice Lee identified in his state proceedings was related to potential sentencing implications rather than his defense and likelihood of success at trial. Id. at 22–24. Respondents further argue that the Martinez exception to procedural default is inapplicable here where Lee voluntarily withdrew his participation in the state proceedings and refused to assist postconviction counsel. Id. at 24–26. In his Reply, Lee acknowledges that the claim he raised in the state courts was not the same claim he raises in his Petition, but contends the claim was not "out of bounds." Reply at 6–7. Alternatively, Lee argues that if the Court finds the claim unexhausted, the Court should excuse the procedural default based on Martinez. Id. at 7–8.

In Lee's Supplemental 3.850 Motion, he alleged counsel was ineffective for misadvising him to proceed to trial rather than accepting the State's ten-year plea offer based on counsel's alleged assurances that "the court could not impose a sentence greater than ten years of prison" whether he pled or was convicted after a trial and that Lee "would be able to have his ten year[] prison

23

sentence run co[n]current to that of his pending federal indictment." Doc. 7-13 at 17–20. He further asserted that he was misadvised by counsel to reject the plea offer because counsel did not share a discovery exhibit with him. Id. at 20–21. Lee does not mention the impeachment of any witness nor challenging the legality of his stop and arrest in these claims. As the claims fall under "the same general legal umbrella but with entirely different factual underpinnings," the current issue was not fairly presented to the state court and remains unexhausted. See Green, 28 F.4th at 1135. Any future attempt to raise this ineffective assistance of counsel claim would be untimely, successive, and thus futile. For these reasons, the claim is procedurally defaulted.

As to Lee's alternative request, the Court does not find Lee has shown Martinez to be applicable. While Lee asserts this claim was not raised due to postconviction counsel's ineffectiveness, the Court is not convinced. Lee himself did not raise the claim in his Rule 3.850 Motion or Supplemental 3.850 Motion. See Docs. 7-11 at 10–19; 7-13 at 13–22. Moreover, Lee was granted an evidentiary hearing with the assistance of postconviction counsel on all grounds of his Supplemental 3.850 Motion. Doc. 7-13 at 23–26. Despite the opportunity to present his claims to the postconviction court with the assistance of counsel, Lee attempted to withdraw his Supplemental 3.850 Motion and refused to participate in the proceedings. The postconviction court gave Lee multiple opportunities to participate in the postconviction

proceedings, but Lee refused. The Court will not excuse the procedural default based on the alleged ineffective assistance of postconviction counsel to raise a claim where Lee not only refused to participate in presenting the claim at the evidentiary hearing but also requested to withdraw all claims.

The Court further finds Lee has not shown his underlying ineffective assistance of counsel claim is substantial. At the evidentiary hearing, counsel testified regarding her conversations with Lee regarding the State's plea offer. Her testimony, which the postconviction court found to be credible, established that she never advised Lee to reject the State's plea offer, but rather that Lee simply would not entertain the idea of a plea offer because he was focused on the prospect of filing a motion to suppress. Doc. 7-13 at 125–29. Counsel stated, "with the facts of this case, [she] would never have told Mr. Lee to go to trial." Id. at 135. Counsel further stated that even after gaining access to all the evidence, she did not feel she had a valid basis to file a motion to suppress. Id. at 128–29. She testified that "although there were repeated conversations about the fact that pretextual stops are okay as long as there's an underlying violation of the traffic code, Mr. Lee continued to focus on those particular issues related to the stop and whether there should be motions that should be filed." Id. at 132. Counsel elaborated, stating:

> Mr. Lee had issues with his stop the whole time, and I continued to tell him that under my understanding of the case law, that pretextual stops

are valid as long as there is a violation of the criminal traffic code. And in his situation, the officers knew him, had seen him, knew he didn't have a driver's license, relayed that information to a marked unit who stopped him, and actually didn't initiate the stop until he ran red lights and ran people off the road and all of those sorts of things.

Mr. Lee's issue was that there were no drugs or gun found in his car and, therefore, the stop shouldn't have been valid. And that's true, there weren't any drugs or gun found in his car, but there were clear violations of the traffic code based on the testimony, and I did not feel that it was appropriate to file those motions to suppress.

Id. at 143. Moreover, while many of the inconsistencies Lee highlights in his Petition surround the ability of the officers to have witnessed him driving through the red light, counsel stated she did not believe that discrediting the officers on their account of Lee running of the red light would have undermined the validity of the stop.[13] Id. at 144–45. Considering the case law under Whren and counsel's credible testimony that she would never have advised Lee to reject the plea offer, that she believed there was no legal basis to support any motion to suppress, and that she counseled Lee on the lack of merit for any

_____

[13] Though the overall issue was discrediting the officers' account of Lee running the red light, the question raised to counsel centered on whether investigating and taking photographs from the officers' vantage point, which hypothetically could have shown a "problem with actually seeing part of the road," would have eliminated the justification for the stop in this matter. See Doc. 7-13 at 143–45. Counsel explained it would not have done so because an officer saw Lee, who did not have a valid license, get into the car and drive it, and another officer saw him enter the wrong lane of traffic. Id.

motion to suppress on this basis, Lee has not shown this claim to be "substantial." Because the claim is unexhausted and the procedural default is not excused under <u>Martinez</u>, Lee is not entitled to federal habeas relief on this claim.

### C. Ground Three

Lee alleges the State engaged in prosecutorial misconduct by making improper argument during its closing argument. Petition at 12; Memo at 21–22. Specifically, Lee claims the prosecutor's comment that the jury should "convict the Defendant of the highest crimes" charged and disregard the lesser included offenses[14] was an incorrect statement of the law and conflicted with the court's instructions. <u>Id.</u> Lee states that the comment "was so harmful it fundamentally tainted the juror's pardoning powers," caused the jury to render a more severe verdict than it would have absent the comment, and deprived Lee of a fair trial. <u>Id.</u> Lee asserts he exhausted this issue "through direct appeal" and raised it as the fifth issue in his State Habeas Petition. Petition at 12.

Respondents contend Lee has not presented a federal question cognizable for federal habeas review. Response at 27. Respondents further assert that the issue was not exhausted, stating Lee never raised any issue of

---

[14] <u>See</u> Doc. 7-2 at 166.

"state error" in his direct appeal and that the issue was not exhausted through his State Habeas Petition due to the First DCA's dismissal, rather than adjudication, of the State Habeas Petition. Id. at 27–30. According to Respondents, because any attempt to raise this issue now in a state habeas petition would be untimely, the claim is procedurally defaulted. Id. at 30. Respondents also argue that Lee has not shown cause or prejudice to overcome the procedural bar and that Martinez is inapplicable. Id. Alternatively, Respondents argue this ground fails on the merits. Id. at 31–33.

In response to Respondents' argument that his claim does not present a constitutional issue, Lee states that his claim is "clearly one of Ineffective Assistance of Appellate Counsel under [Florida Rule of Appellate Procedure] 9.141(c) which is reviewed as a violation of the U.S. [C]onstitution's Due Process clause." Reply at 9. Additionally, Lee contends the State's argument that the First DCA dismissed the petition without reaching the merits is unreasonable since he believes the ineffective assistance of appellate counsel claims were clearly asserted and are properly raised in such petitions.

Lee did not raise the claim he asserts here in his direct appeal. See Doc. 7-3. While Lee did raise this claim in Ground Five of his State Habeas Petition, the court dismissed that petition and did not address the merits. See Docs. 7-18; 7-19. To the extent Lee contends that he "clearly" raised a claim of ineffective assistance of appellate counsel in his State Habeas Petition, that is

not the claim he presents in his Petition. Rather, his claim in the Petition is that his trial was impacted by the prosecutor's improper closing argument. He makes no mention of appellate counsel within Ground Three of his Petition or Memorandum, see Petition at 12; Memo at 21–22. While Lee may have presented the prosecutorial misconduct claim in his State Habeas Petition, it was not cognizable as such within that petition. See McAffee v. State, 925 So. 2d 1069, 1070 (Fla. 2d DCA 2006) (finding claims of prosecutorial misconduct were precluded from review in a 9.141 habeas petition); Gerome v. State, 368 So. 3d 38, 41 (Fla. 3d DCA 2023) ("However, [petitioner] is precluded from raising these issues in a petition for writ of habeas corpus; prosecutorial misconduct allegations should be raised on direct appeal or via a 3.850 proceeding."). Accordingly, the prosecutorial misconduct claim is unexhausted. See Castille, 489 U.S. at 351 (finding a claim is not "fairly presented" to state court when it is "presented for the first and only time in a procedural context in which its merits will not be considered").

More importantly, Florida has a two-year limitations period for filing a state habeas corpus petition alleging ineffective assistance of appellate counsel, running from the date the petitioner's judgment and sentence becomes final following direct review. See Fla. R. App. P. 9.141(d)(5). As Lee's judgment and sentence became final when the Florida Supreme Court declined jurisdiction on September 12, 2019 (see Doc. 7-8), his petition for habeas review

of any alleged ineffective assistance of counsel claim was untimely when filed on November 12, 2021 (see Doc. 7-18). Accordingly, it is reasonable to conclude the State Habeas Petition was dismissed as untimely. See Rogers v. Sec'y, Dep't of Corr., 829 F. App'x 437, 442 (11th Cir. 2020) (stating that where there is an unexplained decision "the nature of the disposition ('dismissed' rather than 'denied') and surrounding circumstances … [may] indicate[] that the basis was procedural default." (quoting Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991))). Accordingly, this claim is procedurally defaulted.

Lee has not shown cause or prejudice to overcome the procedural default. Moreover, although Lee does not assert the Martinez exception for this claim,[15] the Court notes Martinez does not apply to claims of ineffective assistance of appellate counsel or prosecutorial misconduct. Luciano v. Sec'y, Dep't of Corr., 701 F. App'x 792, 794 (11th Cir. 2017) ("We have repeatedly underscored Martinez's narrow scope, and emphasized that Martinez applies only to excusing a procedural default of ineffective-trial-counsel claims." (citing Chavez v. Sec'y, Fla. Dep't of Corr., 742 F.3d 940, 945 (11th Cir. 2014))).

Even if this Court were to construe Lee's present claim as one of ineffective assistance of appellate counsel and find it exhausted, Lee's claim would fail on the merits. In Florida, attorneys are permitted wide latitude in

---

[15] Lee only replied that the claim was exhausted and meritorious. See Reply at 8–11.

closing arguments. <u>Gore v. State</u>, 719 So. 2d 1197, 1200 (Fla. 1998). Counsel may draw logical inferences and advance all legitimate arguments. <u>Thomas v. State</u>, 748 So. 2d 970, 984 (Fla. 1999). Claims of allegedly improper comment for which trial counsel did not make a contemporaneous objection will be waived for review on appeal unless the unobjected to comments rise to the level of fundamental error. <u>Brooks v. State</u>, 762 So. 2d 879, 898–99 (Fla. 2000). Fundamental error is error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." <u>Id.</u> at 899 (citation omitted).

Here, Lee's trial counsel did not object to the comment by the State. Doc. 7-2 at 166, 167.[16] Accordingly, appellate counsel would have had to show the comment rose to the level of fundamental error to be successful on appeal. The comment in question was a reiteration of the trial court's forthcoming instruction pursuant to Florida Standard Jury Instruction 3.12: "You may find the Defendant guilty as charged in the information or guilty of such lesser included crime as the evidence may justify or not guilty. If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt." <u>See</u> Doc. 7-2 at 185–86. Moreover, the comment came after

---

[16] While Lee's trial counsel did object at the end of the State's rebuttal closing argument, he objected only to the State showing the jurors a verdict form filled out by the State, not any comment made by the State in argument.

the State had gone through the evidence at trial to highlight why it believed the evidence showed Lee should be found guilty of the charged offenses, rather than the lesser included offenses. Id. at 145–49, 166. This comment which mirrored a standard Florida jury instruction and was based off the evidence presented, and reasonable inferences therefrom, cannot be said to constitute error, let alone fundamental error. Thus, any suggestion that appellate counsel was ineffective for failing to raise this issue is meritless. See Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) ("It is . . . crystal clear that there can be no showing of actual prejudice from an appellate attorney's failure to raise a meritless claim."). Lee is therefore not entitled to federal habeas relief on this claim.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Lee seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Lee "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were

32

'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Lee appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate

of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of September, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

JaxP-12
c:    Michael Jerome Lee, #866560
      Counsel of Record

34